# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| PENNY R. TROSPER, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 1: 20 CV 51 DDN ) |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Penny R. Trosper for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I.  BACKGROUND

Plaintiff was born on September 14, 1967 and was 49 years old at the time of her September 1, 2016 alleged onset date. She filed her application on May 16, 2017, claiming disability due to back surgery, avascular necrosis (death of bone tissue due to lack of blood supply), wrist injury and surgical intervention, glaucoma, anxiety, depression, and sequela of the wrist. (Tr. 61, 142-44.) Her application was denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 71.)

On January 25, 2019, following a hearing, an ALJ issued a decision concluding that she was not disabled. (Tr. 9-17.) The Appeals Council denied her request for review. (Tr. 1.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to her appeal.

Plaintiff saw Karen Tracy, nurse practitioner, on October 21, 2015, complaining of moderate to severe lower back pain.  Her pain radiated to her thighs and she described it as achy and burning.  Her gait was antalgic or pain avoiding on both sides when she was not using an assistive device.  Her back was tender to palpation and spasmed.  She had severe pain with ranges of motion in her lumbar spine.  An X-ray of her lumbar spine showed moderate degenerative endplate changes and marginal osteophytes.  There was no evidence of compression deformities or spondylolisthesis (vertebral displacement).  (Tr. 230-36, 252.)

Examination findings on October 29, 2015 showed some improvement in plaintiff's condition with only the left side of her gait being antalgic, no use of an assistive device, and only moderate pain with motion.  (Tr. 235-36.)

An MRI of plaintiff's left hip on November 16, 2015 showed findings suggestive of early avascular necrosis in her left femoral head, covering about 30 percent of the articular surface of the femoral head.  An MRI of her lumbar spine on January 4, 2016, revealed mild facet arthropathy at T12-L1, L1-L2, and L5-S1.  It also showed mild disc bulge, minimal spinal canal stenosis, mild narrowing of the bilateral recess, mild bilateral neuroforaminal stenosis, and mild to moderate left facet arthropathy.  At L4-L5 there was moderate to severe canal stenosis secondary to disc bulge and thickening of the ligamentum flavum, markedly stenosed lateral recesses, mild neuroforaminal stenosis, and mild to moderate left facet arthropathy.  (Tr. 253-55.)

Plaintiff underwent back surgery in March 2016.  She was on medical leave from March to September 2016 when she was released to return to work.  (Tr. 34.)

Plaintiff saw Penny Shelton, nurse practitioner, on January 25, 2017, reporting moderate pain in her back and hip.  Her bilateral hip ranges of motion were reduced.  Strength in her left hip was reduced to 3/5, as was left hip flexion and extension.  Her gait was normal, but her posture was flat back (reduced lumbar spine curvature).  She had paraspinal tenderness with painful ranges of motion.  She had mild swelling and maximum tenderness in her left hip and received trigger point injections into her gluteus maximus and trochanteric bursa.  (Tr. 376-79.)

On April 30, 2017, plaintiff was seen in the emergency room after falling on her outstretched hand and fracturing her left wrist.  Musculoskeletal examination revealed no swelling or tenderness

and normal range of motion in the extremities.  She underwent surgery for the fracture on May 3, 2017.  Moderate osteoporosis was noted during the procedure.  (Tr. 264-66, 272, 284.)

Plaintiff saw Andrew C. Davis-Cole, nurse practitioner, and Alfredo S. Romero, M.D., on July 13, 2017.  Her lumbar examination was notable for moderate diffuse tenderness over the bilateral facet joints, with radiation to the left lower extremity down to the toes.  Her ranges of motion were symptomatic, although her muscle strength was normal.  Facet stress tests, used to assess the lumbar spine facet joints; slump test, used to assess neurological symptoms; and Faber's test, used to assess musculoskeletal pathologies, were all positive.  Moderate tenderness was noted over the left side of her sacroiliac joint.  Left hip ranges of motion were decreased with pain and greater trochanteric region was notable for moderate tenderness.  Examination also revealed plaintiff was fully oriented and cooperative, had a normal respiratory system, and full strength with normal reflexes in the bilateral lower extremities.   Psychiatric evaluation was normal.  Plaintiff's overall functioning for activities of daily living was rated as "good."  Dr. Romero believed that her pain may be radicular from her hip joint.  High dose opioids were to be avoided.  (Tr. 312-13, 317-18, 327-28.)

Plaintiff underwent lumbar epidural injections on September 8, October 6, and October 27, 2017.  (Tr. 313, 318, 328.)

Plaintiff saw Tamara A. Keesee, nurse practitioner, and Abdul Naseem Naushad, M.D., on November 3, 2017.  She had moderate tenderness in the center of her cervical spine and around the facet joints.  Her ranges of motion were symptomatic, although she had full strength and her sensation was intact.  Her sacroiliac joint was positive to palpation bilaterally.  She had moderate tenderness over her left hip.  Her upper extremities, as well as psychiatric examination, were normal.  (Tr. 306-8.)

Plaintiff saw Brianna Pullum-Thompson, nurse practitioner, on April 17, 2018 for sinus congestion, lab work, and smoking cessation.  She complained of upper respiratory symptoms, cough, and wheezing, but denied having any musculoskeletal pain in the back, neck, joints, or muscles, or any decreased range of motion.  Examination revealed sinus pressure, congestion, cough, and wheezing.  Plaintiff was noted as being in no acute distress with normal psychiatric and neurologic evaluations.  Musculoskeletal examination revealed normal range of motion and strength, as well as no tenderness or swelling.  (Tr. 374-75.)

On April 17, 2018, plaintiff underwent a diabetes consultation. She reported she was a chronic smoker with a history of shortness of breath and cough, but a review of systems was otherwise negative. She denied any numbness in her hands or feet. On examination, plaintiff was alert and oriented, in no distress, had wheezing throughout the lungs, normal pulses, some eczema on the left foot with reduced sensation, a normal psychiatric evaluation, and unremarkable musculoskeletal examination with normal range of motion and strength, and no tenderness or swelling. (Tr. 414-15.)

She followed up with Ms. Pullum-Thompson on May 1, 2018, and reported that she continued to smoke, had a cough, back pain, and joint pain, but denied muscle pain, decreased range of motion, shortness of breath, and psychiatric symptoms. Examination revealed she was in no distress, had clear lungs with normal respirations, a "slight" cough, no edema in extremities, normal pulses, and unspecified back and joint pain. (Tr. 372.)

Plaintiff saw Ms. Pullum-Thompson for contact dermatitis and wheezing on May 30, 2018. She reported she continued to smoke, and was experiencing cough, and wheezing. She denied any psychiatric, musculoskeletal, or other symptoms. She was diagnosed with contact dermatitis and wheezing. (Tr. 370-71.)

On June 22, 2018, Ms. Pullum-Thompson completed a Physical Medical Source Statement (MSS). She had been treating plaintiff for approximately two months before completing the MSS but noted that plaintiff had seen other providers in the office before. She noted that plaintiff "at times [] is known to use a cane" and that plaintiff is not a malingerer. She opined that plaintiff could stand or walk for up to two hours in an eight-hour workday and could sit for five hours total in an eight-hour workday. She would need a job that allowed her to shift positions at will from sitting, standing, and walking. She could rarely carry up to 20 pounds, occasionally carry up to 10 pounds, and frequently carry less. She could rarely stoop or bend, could never crouch, squat, climb ladders or stairs, and would have pain interfering with her ability to attend and concentrate on a frequent basis. Ms. Pullum-Thompson believed plaintiff would be capable of only low stress jobs due to pain, anxiety, and depression, and that she would be absent more than four days per month because of her impairments or treatment. (Tr. 421-23.)

Plaintiff saw Ms. Pullum-Thompson on June 27, 2018 for a checkup, stomach pain, and laboratory studies. On review of symptoms, plaintiff reported she continued to smoke, had a cough,

and had left-sided abdominal pain. Plaintiff admitted she had not been compliant with prescribed breathing medications. She denied shortness of breath, and psychiatric or musculoskeletal symptoms. (Tr. 368-69.)

**ALJ Hearing**

On November 28, 2018, plaintiff appeared and testified to the following at a hearing before the ALJ. (Tr. 27-59.) She has a seventh grade education and past work as an assistant manager in retail from 2012 through 2016. She was placed on medical leave following back surgery in 2016. However, when she returned to work in September 2016, she was terminated for taking excessive medical leave. She was having numerous problems with her back. She also fell and broke her wrist and her wrist now goes numb and her fingers swell. She is unable to touch her hands because her wrist is so sensitive. She was undergoing pain management until she could no longer afford it. (Tr. 27-34.)

She has diabetes and takes two prescription medications for it. She sees a medical doctor for diabetes treatment on a quarterly basis. Ms. Pullum-Thompson is her primary care provider for most of her impairments. She has health insurance but cannot afford the copays. Her diabetes medication alone costs over $200.00 per month. She injured her left, non-dominant wrist in 2017. She tries to walk pursuant to doctors' orders but loses her breath if she goes too far from home. She does not use a cane but holds onto a grocery cart for support while grocery shopping. She has trouble dressing herself every day. (Tr. 36-50.)

A vocational expert (VE) testified to the following. An individual with plaintiff's age, education, and work experience, with the ALJ's suggested RFC determination (later found by the ALJ), could perform her past-relevant work as a retail manager and assistant manager. Alternatively, such an individual could perform other work in the national economy such as cleaner/housekeeper, laundry worker, and small products assembler. If such an individual was limited to only occasional handling and fingering with the non-dominant hand, no work would be available. If such an individual were as limited as believed by Ms. Pullum-Thompson, then no work would be available. In response to the ALJ's question about whether the VE's testimony was consistent with the Dictionary of Occupational Titles (DOT), the VE stated that the DOT does not

address the use of a cane, sit/stand options, low-stress work, or absenteeism, so her testimony in that regard is based on 25 years of experience and vocational research.  (Tr. 51-58.)

### III.   DECISION OF THE ALJ

On January 25, 2019, the ALJ issued a decision finding that plaintiff was not disabled.  (Tr. 9-17.)  At Step One of the sequential evaluation, the ALJ found that plaintiff had not performed substantial gainful activity since September 1, 2016, her alleged onset date.  At Step Two, the ALJ found plaintiff had the severe impairment of degenerative changes of the lumbar spine.  At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equals an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 17-18.)

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform "light" work as defined in 20 CFR 404.1567(b), except after 30 minutes of sitting she needs five minutes of repositioning, but she could reposition at her work station and remain on task.  She could occasionally climb ramps and stairs.  She could never climb ladders, ropes, or scaffolds.  She could occasionally balance, stoop, kneel, crouch and crawl.  With this RFC, the ALJ found plaintiff could perform her past relevant work as an assistant manager and manager.  The ALJ also made alternative findings at Step Five, finding that there were jobs that exist in significant numbers in the national economy that plaintiff could perform.  Accordingly, the ALJ found plaintiff was not disabled under the Act.   (Tr. 13-17.)

### IV.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings apply the relevant legal standards to facts that are supported by substantial evidence in the record as a whole.  *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.*  In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision.  *Id.*  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary

outcome or because the court would have decided the case differently.  *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.  42 U.S.C. § 423(a)(1)(D), (d)(1)(A*); Pate-Fires*, 564 F.3d at 942.  A five-step regulatory framework is used to determine whether an individual is disabled.  20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW).  *Id.* § 404.1520(a)(4)(iv).  The claimant bears the burden of demonstrating she is no longer able to return to her PRW.  *Pate-Fires*, 564 F.3d at 942.  If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy.  *Id.;* 20 C.F.R. § 404.1520(a)(4)(v).

## V.   DISCUSSION

Plaintiff challenges the manner and method by which the ALJ determined her RFC, claiming that the ALJ failed to give good reasons to discount the opinion of her treating source, nurse practioner Pullum-Thompson, and that without this opinion evidence there was insufficient medical evidence to support the RFC determination.  She argues the ALJ failed to provide any in-depth analysis and formulated her RFC "out of whole-cloth" without any medical guidance.  The Court disagrees.

**Opinion Evidence**

Plaintiff's claim was filed on May 16, 2017.  The Social Security Administration, by regulation, altered how it considered and articulated medical opinions for all claims filed after

- 7 -

March 27, 2017.  20 C.F.R. § 404-1520c.  Under the new rules, adjudicators no longer give specific evidentiary weight or deference to any medical opinion, including a treating source opinion.  20 C.F.R. § 1520c(a).  Instead, the Agency considers a list of factors and articulates how each medical opinion influenced its final decision.  The factors include supportability, consistency, relationship to the claimant, specialization, and "other factors."  § 404.1520c(c)(1)-(5).  While adjudicators use all these factors in evaluating a medical opinion, they need only articulate their considerations of supportability and consistency.  § 404.1520c(b)(2).  The regulations specifically state supportability and consistency as "the most important factors."  *Id.*  If a medical opinion fulfills the two main factors, supportability and consistency, it is a persuasive opinion.  § 404.1520c(c)(1)-(2).

      The ALJ properly articulated these factors in his decision.  In his evaluation of the record evidence the ALJ considered an MSS completed by Ms. Pullum-Thompson and found it "not persuasive" because Ms. Pullum-Thompson did not support her opinion with any specific objective medical evidence, and it was not consistent with the remainder of the record evidence, including plaintiff's own testimony at the hearing.  The ALJ discussed the lack of any objective record evidence to support the mental limitations assessed by Ms. Pullum-Thompson, as well as plaintiff's testimony that she did not require the use of a cane.  (Tr.15, 41.)

      Plaintiff asserts the ALJ's rationale is not supported by substantial evidence and is "too broad."  The Court finds otherwise.  The paragraph concerning the ALJ's evaluation of Ms. Pullum-Thompson's opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment.  Further, in explaining his findings, it is sufficient for the ALJ to reference the relevant factors and then discuss the reasons for crediting or rejecting evidence of disability.  *Strongson v. Barnhart*, 361 F.3d 1066, 1071-72 (8th Cir. 2004).

      The ALJ's conclusions about the opinion evidence are supported by the record as a whole, as discussed throughout his decision.  When read in context, as part of the overall discussion of plaintiff's RFC, the ALJ appropriately documented consideration of the medical and nonmedical evidence that supports the evaluation of the opinion evidence.  The ALJ addressed the consistency and supportability of Ms. Pullum-Thompson's opinion with a discussion of plaintiff's alleged symptoms and limitations, as well as consideration of treatment records during the relevant period.  The ALJ concluded that overall, plaintiff's treatment records indicated mild-to-moderate

abnormalities at most and failed to document objective evidence to support the extreme limitations alleged by plaintiff or Ms. Pullum-Thompson.  (Tr. 12-15.)

The ALJ acknowledged that evidence showed that plaintiff complained of back and left leg pain with ranges of motion; however, despite plaintiff's allegations, the record evidence during the relevant period generally revealed she was in no distress, had intact sensation and normal reflexes, retained full strength with normal muscle tone, walked with a normal gait, had normal upper extremities, and no psychiatric abnormalities.  (Tr. 12-15, 307-08, 338-40, 343-45, 353-54, 370-79, 406-08, 414-15).  The ALJ also considered diagnostic imaging, including MRIs and x-rays that generally revealed "mild" or "moderate" degenerative disease in plaintiff's spine and left hip.  (Tr. 14-15, 252-55.)

Plaintiff contends the ALJ erred in finding that Ms. Pullum-Thompson did not support her MSS with objective medical evidence.  She argues that the MSS contained a detailed depiction of plaintiff's impairments, including the length of her treatment history with Ms. Pullum-Thompson, as well as a list of her symptoms and diagnoses.  However, this information is not objective evidence.  Objective medical evidence consists of "signs, laboratory findings, or both."  20 C.F.R. § 404.1502(f).  Signs are "anatomical, physiological, or psychological abnormalities that can be observed, apart from [an individual's] statements (symptoms)" and "must be shown by acceptable clinical diagnostic techniques."  20 C.F.R. § 404.1502(g).  The MSS included a question asking her to identify the clinical findings and objective signs in support her opinion, but instead of providing an explanation of the objective medical evidence, Ms. Pullum-Thompson repeated some of plaintiff's diagnoses and symptoms. (Tr. 421.)   Because Ms. Pullum-Thompson failed to support her opinion with objective medical evidence, the ALJ appropriately determined that it was not adequately supported.

Plaintiff also disputes the ALJ's rationale for finding Ms. Pullum-Thompson's opinion was inconsistent with other record evidence, as well as with some of plaintiff's own testimony.  A review of the ALJ's decision in its entirety reveals the ALJ properly considered the consistency of Ms. Pullum-Thompson's MSS with other record evidence, including plaintiff's own testimony. *See* 20 C.F.R. § 404.1520c(c)(2).   Plaintiff admits that some of her testimony is inconsistent with the MSS.   She argues, however, that the only reason the opinion is inconsistent with her own testimony is because plaintiff believes she is more limited than indicated by Ms. Pullum-Thompson,

and therefore, this should make the opinion more persuasive.  The Court disagrees. As noted by the ALJ, the consistency factor is not based on plaintiff's testimony alone, but also requires consideration of other record evidence.  *See* 20 C.F.R. § 404.1520c(c)(2).  In evaluating Ms. Pullum-Thompson's opinion, the ALJ documented consideration of plaintiff's testimony, as well as other medical evidence, which as detailed above, generally revealed mild-to-moderate abnormalities at most, and was largely inconsistent with the extreme limitations set forth by Ms. Pullum-Thompson. (Tr. 12-15, 252-55, 307-08, 338-40, 343-45, 353-54, 370-79, 406-08, 414-15).

Plaintiff disagrees with at least one example of inconsistency cited by the ALJ, specifically Ms. Pullum-Thompson's opinion that plaintiff required the use of a cane and that her symptoms would frequently interfere with her ability to maintain attention and concentration.  The ALJ's conclusion regarding these limitations is supported by substantial evidence.  The ALJ found Ms. Pullum-Thompson's statement that plaintiff sometimes required the use of a cane was inconsistent with plaintiff's testimony denying that she used a cane but did use a grocery cart for support when she is in a grocery store.

Plaintiff also argues the ALJ erred in finding Ms. Pullum-Thompson's opinion regarding her mental limitations unsupported.  However, plaintiff has not cited any objective evidence supporting such limitations.  The ALJ noted the record evidence does not document any mental limitations, whether due to pain or mental impairments. (Tr.15.)  Mental status examinations throughout the relevant period consistently revealed plaintiff was in no distress, was alert and fully oriented, and had no psychiatric abnormalities.   (Tr. 307-08, 338-40, 343-45, 353-54, 368, 370, 372, 374, 378-79, 406, 408, 415.)  The record also reveals plaintiff denied having psychiatric symptoms.  (Tr. 368, 370, 372, 374.)  Plaintiff argues her physical symptoms of pain along with her mental health symptoms support the mental limitations in Ms. Pullum-Thompson's opinion.  However, the record lacks any evidence to support this allegation.   While the agency will consider descriptions from medical and nonmedical sources about a how a claimant's symptoms affect her ability to perform daily activities and work, statements about pain or other symptoms "will not alone establish" that a claimant is disabled.  20 C.F.R. § 404.1529(a). Subjective allegations of pain may be discounted by the ALJ if the evidence as a whole is inconsistent with the claimant's testimony.  *Andrews v. Colvin,* 791 F.3d 923, 929 (8th Cir. 2015).

When the decision is read in its entirety, instead of only the single paragraph addressing Ms. Pullum-Thompson's opinion read in isolation, it shows the ALJ properly considered the record evidence as whole when evaluating the supportability and consistency of the opinion.  In sum, Ms. Pullum-Thompson's opinion is not supported by objective evidence or consistent with the remainder of the record.  Substantial evidence is a lower standard than preponderance of the evidence, and great deference is given to the ALJ's decision.  *Crawford v. Colvin*, 809 F.3d 404, 407-08 (8th Cir. 2015).  It is the ALJ's job to resolve conflicts in the evidence, as the ALJ did in this case.  *See Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014).

**Residual Functional Capacity**

Plaintiff also argues that the ALJ erred in formulating her RFC by using his own lay interpretation of the evidence instead of relying on medical and opinion evidence that supported her symptoms and limitations.  The Court disagrees.

A claimant's RFC is the most she can do despite her physical or mental limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a).  Because a claimant's RFC is a medical question, the ALJ is required to consider at least some supporting evidence from a medical professional and should obtain medical evidence that addresses the claimant's ability to function in the workplace.  *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted).  *See also Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (ALJ's RFC assessment must be supported by some medical evidence of claimant's ability to function in the workplace).  "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand."  *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell*, 259 F.3d at 712).  The burden to prove the claimant's RFC rests with the claimant, however, and not the Commissioner.  *Pearsall*, 274 F.3d at 1217.

As discussed above, despite plaintiff's allegations of debilitating pain and other symptoms, the ALJ noted the record evidence relevant to the period at issue documented largely normal or

mild findings. (Tr. 12-15.) As the ALJ discussed, this evidence generally revealed plaintiff had back and left leg pain with ranges of motion, but she was in no distress, had intact sensation and normal reflexes, retained full strength with normal muscle tone, walked with a normal gait, had normal upper extremities, and had no psychiatric abnormalities.  (Tr. 12-15, 307-08, 338-40, 343-45, 353-54, 370-79, 406-08, 414-15.)  Such evidence provides adequate information of plaintiff's ability to function to allow the ALJ to make a determination regarding disability. *See generally* 20 C.F.R. §§ 404.1520b, 404.1545.

To the extent plaintiff is arguing the ALJ should have further developed the record, the Court concludes there was no need.  "The ALJ has a duty to develop the record, but that duty is not never-ending and the ALJ is not required to disprove every possible impairment. The ALJ is required to order medical tests and examinations only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).  The burden to establish the limitations contained in the RFC belongs to the claimant. *See Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016); *see also* 20 C.F.R. § 404.1512(a).  At the hearing the ALJ asked plaintiff's counsel whether the record was complete, and plaintiff's representative indicated there was nothing outstanding. (Tr. 31.) The ALJ conducted an independent review of the medical evidence.  All of the credible evidence together formed substantial medical evidence to support the RFC.  For this reason, the ALJ was not required to obtain additional medical evidence. *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016).

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

                        /s/ David D. Noce
                        **UNITED STATES MAGISTRATE JUDGE**

Signed on May 10, 2021.